UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE JUDITH M. BARZILAY, SENIOR JUDGE

| | | |
|---|---|---|
| ARCHER DANIELS MIDLAND COMPANY, CARGILL, INCORPORATED, and TATE & LYLE AMERICAS LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Consol. Court No. 11-00537 |
| UNITED STATES, | ) ) | **PUBLIC VERSION** |
| Defendant, | ) ) ) | |
| and | ) ) | |
| YIXING-UNION BIOCHEMICAL CO., LTD., | ) ) | |
| Defendant-Intervenors. | ) ) ) | |

**PLAINTIFFS' RULE 56.2 BRIEF IN SUPPORT OF
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Joseph W. Dorn
Patrick J. Togni

KING & SPALDING LLP
1700 Pennsylvania Ave. NW
Washington, DC  20006
(202) 737-0500

Counsel for Plaintiffs

July 11, 2012

19237521

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................. iii

STATEMENTS REQUIRED BY RULE 56.2 .................................................... 1

I.     ADMINISTRATIVE DETERMINATION UNDER REVIEW ...................... 1

II.    ISSUES PRESENTED FOR REVIEW AND THE REASONS FOR
CONTESTING THE *FINAL RESULTS* ............................................. 1

    A.    Whether Commerce's Failure To Determine The Countervailability Of
The Government Provision Of Steam Coal For Less Than Adequate
Remuneration Was Contrary To Law ................................................. 1

    B.    Whether Commerce's Failure To Adjust The Calculation Of Its
Preliminary Benchmark For The Government Provision Of Steam Coal
For Less Than Adequate Remuneration Was Contrary To Law ................ 2

    C.    Whether Commerce's Finding That The Consolidated Entity RZBC Was
Creditworthy In 2008 And 2009 Was Contrary To Law And Unsupported
By Substantial Evidence ................................................................. 3

STATEMENT OF FACTS ............................................................................... 3

SUMMARY OF ARGUMENT ........................................................................ 6

ARGUMENT ................................................................................................ 8

I.    STANDARD OF REVIEW ...................................................................... 8

II.    COMMERCE'S FAILURE TO DETERMINE THE COUNTERVAILABILITY
OF THE GOVERNMENT PROVISION OF STEAM COAL FOR LESS THAN
ADEQUATE REMUNERATION WAS CONTRARY TO LAW .................... 9

    A.    The Statute Unambiguously Instructs Commerce To Determine Whether
Or Not A Countervailable Subsidy Is Being Provided Where, As Here,
Commerce Initiated An Investigation Of Plaintiffs' New Subsidy
Allegation ................................................................................. 10

    B.    The Deferral Statute And Regulations Are Irrelevant, Because Commerce
Did Not "Discover A Practice Which Appears To Be A Countervailable
Subsidy" ................................................................................... 12

III.    COMMERCE'S FAILURE TO ADJUST THE CALCULATION OF ITS
PRELIMINARY BENCHMARK FOR THE GOVERNMENT PROVISION OF
STEAM COAL FOR LESS THAN ADEQUATE REMUNERATION WAS
CONTRARY TO LAW .......................................................................... 16

IV.    COMMERCE'S FINDING THAT THE CONSOLIDATED ENTITY RZBC WAS CREDITWORTHY IN 2008 AND 2009 WAS CONTRARY TO LAW AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE ............................................ 17

    A.    Commerce's Regulation Requires Its Creditworthiness Analysis To Be Based Upon "Information Available At The Time Of The Government-Provided Loan" ................................................................................................ 17

    B.    Commerce's Final Creditworthiness Determinations For 2008 And 2009 Were Erroneously Based On Information Unavailable At The Time Of The Government-Provided Loans ........................................................................ 19

CONCLUSION AND PRAYER FOR RELIEF .......................................................... 22

19237521

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alhambra Foundry v. United States,*
  9 CIT 632, 626 F. Supp. 402 (1985) ........................................................................8

*Allegheny Ludlum Corp. v. United States,*
  24 CIT 452, 112 F. Supp. 2d 1141 (2000) ...........................................................15

*Bando Chem. Indus., Ltd. v. United States,*
  16 CIT 133, 787 F. Supp. 224 (1992),
  *aff'd,* 26 F.3d 139 (Fed. Cir. 1994) .......................................................................8

*Bethlehem Steel Corp. v. United States,*
  25 CIT 307, 140 F. Supp. 2d 1354 (2001) ......................................................15, 16

*Bull v. United States,*
  479 F.3d 1365 (Fed. Cir. 2007) ..............................................................................8

*Burlington Truck Lines, Inc. v. United States,*
  371 U.S. 156 (1962) .................................................................................................9

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) ..................................................................................................8

*Metallverken Nederland B.V. v. United States,*
  13 CIT 1013, 728 F. Supp. 730 (1989) ...................................................................8

*Motor Vehicle Mfrs. Ass'n of United States v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ....................................................................................................9

*Saarstahl AG v. United States,*
  21 CIT 1158, 984 F. Supp. 616 (1997),
  *aff'd in part and rev'd in part on other grounds,* 177 F. 3d 1314 (Fed. Cir. 1999) ...............18

*Universal Camera Corp. v. NLRB,*
  340 U.S. 474 (1951) .................................................................................................8

*USX Corp. v. United States,*
  11 CIT 82, 655 F. Supp. 487 (1987) .......................................................................9

**STATUTES**

19 U.S.C. § 1516a(a)(2)(A)(i)(I) ..............................................................................13

19 U.S.C. § 1516a(a)(2)(B)(iii) ............................................................................13

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................................8

19 U.S.C. § 1671a ................................................................................................10

19 U.S.C. § 1671b(b) ...........................................................................................11

19 U.S.C. § 1671b(c) ............................................................................................11

19 U.S.C. § 1671d(a)(1) ........................................................................................11

19 U.S.C. § 1677d ....................................................................................2, 12, 13

19 U.S.C. § 1677d(1) ............................................................................................12

Trade And Tariff Act of 1984, Pub. L. No. 98-573, § 617, 98 Stat. 2948 (1984) ........................13

Trade Agreement Act of 1979, Pub. L. No. 96-39, § 775, 93 Stat. 144 (1979) ...........................12

## OTHER AUTHORITIES

19 C.F.R. § 351.102(b)(40) ...................................................................................13

19 C.F.R. § 351.102(b)(47) ...................................................................................13

19 C.F.R. § 351.102(b)(47)(i) ...............................................................................13

19 C.F.R. § 351.301(d)(4)(i)(B) ............................................................................15

19 C.F.R. § 351.311 ....................................................................................2, 13

19 C.F.R. § 351.311(b) ..................................................................................14, 15

19 C.F.R. § 351.311(c)(2) ..............................................................................2, 9

19 C.F.R. § 351.505(a)(3)(iii) ................................................................................4

19 C.F.R. § 351.505(a)(4) ...........................................................................3, 17

19 C.F.R. § 351.505(a)(4)(i) .......................................................5, 7, 18, 19, 21

19 C.F.R. § 351.505(a)(6)(i) ..................................................................................4

*Certain Kitchen Appliance Shelving And Racks From The People's Republic Of China,*
77 Fed. Reg. 21744 (Dep't of Commerce Apr. 11, 2012) .................................10, 15

*Certain New Pneumatic Off-the-Road Tires From The People's Republic Of China,*
73 Fed. Reg. 40480 (Dep't of Commerce Jul. 15, 2008) .......................................18

19237521

*Citric Acid And Certain Citrate Salts From The People's Republic Of China,*
  76 Fed. Reg. 33219 (Dep't of Commerce Jun. 8, 2011) .....................................................5, 11

*Citric Acid And Certain Citrate Salts From The People's Republic Of China,*
  76 Fed. Reg. 77206 (Dep't of Commerce Dec. 12, 2011) ..................................1, 2, 5, 6, 9, 12

*Notice of Proposed Rulemaking and Request for Public Comments,*
  62 Fed. Reg. 8818 (Dep't of Commerce Feb. 26, 1997) .........................................................19

*Opportunity To Request Administrative Review,*
  75 Fed. Reg. 23236 (Dep't of Commerce May 3, 2010) ...........................................................3

*Sulfanilic Acid From Hungary,*
  67 Fed. Reg. 60223 (Dep't of Commerce Sept. 25, 2002) .....................................................19

19237521

## STATEMENTS REQUIRED BY RULE 56.2

### I.   ADMINISTRATIVE DETERMINATION UNDER REVIEW

The administrative determination challenged by Plaintiffs[1] and under review is the final

determination in the first administrative review of the countervailing duty ("CVD") order on

citric acid and certain citrate salts from China for the period September 19, 2008 through

December 31, 2009. *See Citric Acid And Certain Citrate Salts From The People's Republic Of*

*China*, 76 Fed. Reg. 77206 (Dep't of Commerce Dec. 12, 2011) (final admin. review) ("*Final*

*Results*") (IA ACCESS P.D. 73) and accompanying *Issues and Decision Memorandum For The*

*Final Results In The First Administrative Review Of The Countervailing Duty Order On Citric*

*Acid And Certain Citrate Salts From The People's Republic of China* (Dec. 5, 2011) (IA

ACCESS P.D. 74).[2]

### II.   ISSUES PRESENTED FOR REVIEW AND THE REASONS FOR CONTESTING THE *FINAL RESULTS*

#### A.   Whether Commerce's Failure To Determine The Countervailability Of The Government Provision Of Steam Coal For Less Than Adequate Remuneration Was Contrary To Law

The plain language of the statute and Commerce's regulations precludes Commerce from

deferring a final determination regarding the countervailability of a subsidy program for which it

initiated an investigation.  The only way that Commerce may lawfully decline to make a final

---

[1] Plaintiffs, Archer Daniels Midland Company, Cargill, Incorporated, and Tate & Lyle Americas LLC, were petitioners in the original investigation and participated as U.S. producers in the underlying administrative review.

[2] Citations to public and confidential documents in the administrative record that were filed manually are in the form (P.R. __) and (C.R. __), respectively.  In addition, citations to public and confidential documents that were filed electronically after Commerce transitioned to the IA ACCESS system are in the form (IA ACCESS P.D. __) and (IA ACCESS C.D. __), respectively.  Citations to the issues and decisions memoranda accompanying Commerce final determinations are in the form "*IDM* at Comment ___."

determination regarding a countervailable subsidy program and instead "revisit" the program in a future review arises where Commerce "discovers a practice which appears to be a countervailable subsidy" during "the course of a proceeding" such as a CVD investigation or an administrative review of a CVD order, and finds that insufficient time remains to examine the program. *See* 19 U.S.C. § 1677d; *see also* 19 C.F.R. § 351.311.

In the underlying administrative review, and after a timely-filed allegation by Petitioners, Commerce initiated an investigation of the government provision of steam coal for less than adequate remuneration. Consequently, Commerce did not "discover a practice" for which it could lawfully defer examination to a subsequent administrative review because insufficient time remained to examine the practice before the final results of administrative review. *See* 19 C.F.R. § 351.311(c)(2).

Thus, Commerce's decision to defer a finding regarding the government provision of steam coal for less than adequate remuneration is contrary to law. Commerce cited no statutory or regulatory authority for its decision to defer a final determination regarding this program. The unambiguous language of 19 U.S.C. § 1677d and 19 C.F.R. § 351.311 offers no support for Commerce's decision. Because this aspect of Commerce's determination is contrary to law, the Court should remand with instructions for Commerce to make a final determination with regard to this program and, if necessary, to reopen the record to complete that process on remand.

**B.     Whether Commerce's Failure To Adjust The Calculation Of Its Preliminary Benchmark For The Government Provision Of Steam Coal For Less Than Adequate Remuneration Was Contrary To Law**

In the *Final Results*, Commerce found that Petitioners' arguments regarding adjustments to the international freight benchmark used to measure the benefit of steam coal at less than adequate remuneration were "moot." *IDM* at Comment 4 (IA ACCESS P.D. 74). Plaintiffs made the arguments following Commerce's affirmative preliminary countervailability finding

- 2 -

with respect to this program, but Commerce did not address them because it was "not finding a countervailable subsidy at this time with respect to the GOC's provision of steam coal." *Id.* Because Commerce's decision to defer a final determination with regard to the government provision of steam coal for less than adequate remuneration was contrary to law, the related finding that Plaintiffs' benchmark adjustment arguments were moot was also contrary to law. Therefore, the Court's remand instructions to Commerce should also require the agency to address these methodological arguments on remand.

### C.   Whether Commerce's Finding That The Consolidated Entity RZBC Was Creditworthy In 2008 And 2009 Was Contrary To Law And Unsupported By Substantial Evidence

The plain language of Commerce's regulations precludes Commerce from basing its determination of creditworthiness on information that was not available at the time of the government-provided loan. *See* 19 C.F.R. § 351.505(a)(4). Although Commerce acknowledged this requirement in the underlying proceeding, Commerce did not comply with its regulations in its final creditworthiness determination for the consolidated RZBC entity in 2008 and 2009, when it used financial ratios derived from audit reports that were not available at the time of the government-provided loans at issue.

Because Commerce's determination is not supported by substantial evidence and is otherwise not in accordance with law, the *Final Results* should be remanded to Commerce with instructions to use information available at the time of the government-provided loans in 2008 and 2009, in accordance with the plain language of 19 C.F.R. § 351.505(a)(4).

## STATEMENT OF FACTS

On May 3, 2010, Commerce published a notice of opportunity to request an administrative review of the CVD order on citric acid and citrate salts from China for the period of review from September 19, 2008 through December 31, 2009. *See Opportunity To Request*

*Administrative Review*, 75 Fed. Reg. 23236 (Dep't of Commerce May 3, 2010) (P.R. 1).  RZBC

Co., Ltd. ("RZBC Co."), RZBC Import & Export Co., Ltd. ("RZBC IE"), RZBC (Juxian) Co.,

Ltd. ("RZBC Juxian"), and RZBC Group Co. Ltd. ("RZBC Group") (collectively "RZBC"),

Yixing Union Biochemical Co., Ltd. ("Yixing"), and Plaintiffs filed requests for review.  *See*

*Respondent Selection Memorandum* (Aug. 17, 2010) (P.R. 21).  Commerce determined to

examine RZBC and Yixing in the review.  *See id.*

     On February 22, 2011, Commerce determined to initiate the investigation of new subsidy

allegations filed by Plaintiffs, including the provision of steam coal for less than adequate

remuneration.  *See Analysis Of New Subsidy Allegations* (Feb. 22, 2011) (P.R. 69) at 4.  With

respect to this new subsidy allegation, Commerce "determined that Petitioners have alleged the

elements necessary for the finding of a subsidy and supported their allegation with reasonably

available information."  *Id.* at 6.  As a result, Commerce initiated "an investigation of this alleged

subsidy program" in the review.  *Id.* at 11.

     On April 27, 2011 Plaintiffs filed an allegation that RZBC was uncreditworthy during

each of calendar years 2006-2009.  *See Petitioners' Allegation Of RZBC's Uncreditworthiness*

(Apr. 27, 2011) (P.R. 135).  On that basis, Plaintiffs argued that Commerce "should apply the

interest rate calculation applicable to uncreditworthy companies" set forth in Commerce's

regulations at 19 C.F.R. § 351.505(a)(3)(iii).  *Id.* at 2.  Commerce analyzed Petitioners'

allegation and concluded that it was "a specific allegation" of RZBC's uncreditworthiness

"during the relevant time period."  *RZBC Uncreditworthiness Allegation Memorandum* (Jun. 17,

2011) (P.R. 181) at 4.  Commerce found that Plaintiffs "satisfied the regulatory requirements

under 19 C.F.R. § 351.505(a)(6)(i) for initiating an investigation of their uncreditworthiness

- 4 -

allegation" because the allegation was supported by information "that establishes 'a reasonable basis to believe or suspect' that RZBC" was uncreditworthy during 2006-2009.  *Id.*

On June 8, 2011, Commerce published the preliminary results of this administrative review.  *Citric Acid And Certain Citrate Salts From The People's Republic Of China*, 76 Fed. Reg. 33219 (Dep't of Commerce Jun. 8, 2011) (prelim. admin. review) (*"Preliminary Results"*) (P.R. 178).  Commerce preliminarily countervailed the provision of steam coal for less than adequate remuneration.  *Id.* at 33234.  As to its investigation of the creditworthiness of RZBC, Commerce explained its intent "to address this allegation following the issuance of these preliminary results."  *Id.* at 33221.

On September 29, 2011, Commerce issued a preliminary creditworthiness determination for RZBC and concluded that RZBC Juxian was uncreditworthy in 2006, RZBC Co. was uncreditworthy in 2007, and the collective entity RZBC was uncreditworthy in 2008 and 2009. *RZBC Preliminary Creditworthiness Determination* (Sept. 29, 2011) (IA ACCESS C.D. 42, P.D. 52) at 8.  In that memorandum, Commerce explained that 19 C.F.R. § 351.505(a)(4)(i) requires it to base its creditworthiness analysis "on information available at the time of the government-provided loan{.}"  *Id.* at 2.  On December 5, 2011, Commerce issued a final creditworthiness determination for RZBC, but reversed its original conclusion that the collective entity RZBC was uncreditworthy in 2008 and 2009.  *RZBC Final Creditworthiness Determination* (Dec. 5, 2011) (IA ACCESS C.D. 63, P.D. 77) at 11-12.

On December 12, 2011, Commerce published the final results of this administrative review.  *Final Results*, 76 Fed. Reg. 77206  (IA ACCESS P.D. 73).  In the final results, Commerce modified its preliminary determination that the provision of steam coal for less than adequate remuneration constituted a countervailable subsidy and instead "determined that we

need more information regarding the *de facto* specificity of this program before we can make a finding as to its countervailability." *See IDM* at Comment 6 (IA ACCESS P.D. 74). Commerce stated that "we will address this issue in a future review." *Id.* Commerce further explained that "we do not have sufficient record evidence pointing to predominant or disproportionate use," because "we failed to seek information from the GOC on the extent of use by the steam coal consuming industries." *Id* Commerce also stated that "we intend to revisit the *de facto* specificity of this program in a future review." *Id.*

## SUMMARY OF ARGUMENT

In the *Final Results*, Commerce failed to make a final determination regarding the government provision of steam coal for less than adequate remuneration. While citing no statutory or regulatory authority for deferring its investigation of this program, Commerce stated that it would "revisit" the program in a future administrative review. The statute and Commerce's regulations only provide for deferral of investigation of a countervailable subsidy in circumstances not present in the underlying review. Specifically, when Commerce initiates an investigation of a countervailable subsidy, the statute requires Commerce to make both preliminary and final determinations regarding the countervailability of that program. In contrast, where Commerce discovers or receives notice of a practice that appears to provide a countervailable subsidy during the course of a proceeding, Commerce may defer examination to a subsequent administrative review where it finds that insufficient time remains to examine the practice before the final results of review. That scenario is not present here, because Plaintiffs timely alleged and Commerce timely initiated an investigation of the government provision of steam coal for less than adequate remuneration. Thus, Commerce had no lawful basis for deferring a final determination and electing to "revisit" this program in a future administrative review. In fact, Commerce had already made an affirmative preliminary determination regarding

- 6 -

the countervailability of this program.  As a result, the Court should remand to Commerce with

instructions to make a final determination regarding the countervailability of this program, and,

if necessary, to reopen the record to complete its investigation in accordance with the statute.

The failure by Commerce to consider Plaintiffs' arguments regarding adjustments to its

calculation of the preliminary benchmark for the government provision of steam coal for less

than adequate remuneration was also contrary to law.  Commerce determined that Plaintiffs'

arguments were "moot" because of its decision to "revisit" this program in a future

administrative review.  For the reasons stated above, however, Commerce had no lawful basis

for deferring a final determination regarding the countervailability of the government provision

of steam coal for less than adequate remuneration.  As a result, its related decision not to address

Plaintiffs' benchmark calculation arguments was also contrary to law.  On remand, therefore,

Commerce should also be required to address Plaintiffs' arguments in making a final

determination regarding this program.

Finally, Commerce's final determination that the consolidated entity RZBC was

creditworthy in 2008 and 2009 was contrary to law and unsupported by substantial evidence.

Commerce's regulations require that any information used in its creditworthiness analysis be

"available at the time of the government-provided loan{.}"  19 C.F.R. § 351.505(a)(4)(i).  While

acknowledging this requirement, Commerce failed to comply with it.  Instead, Commerce based

its final financial ratio analysis upon information that was clearly not available at the time of the

government-provided loans at issue in 2008 and 2009.  The Court should remand this aspect of

Commerce's final determination and instruct Commerce to conduct a creditworthiness analysis

that complies with Commerce's regulations and its long-standing practice.

19237521

# ARGUMENT

## I.    STANDARD OF REVIEW

This Court must "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  Although the Court is not to reweigh the evidence or substitute its judgment for that of Commerce, *Metallverken Nederland B.V. v. United States*, 13 CIT 1013, 1017, 728 F. Supp. 730, 734 (1989), it must take into account the entire record, including evidence that detracts from the conclusion reached by Commerce. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  Commerce's decisions must "reasonably accurately reflect factual information in the administrative record." *Alhambra Foundry v. United States*, 9 CIT 632, 636, 626 F. Supp. 402, 408 (1985).

In reviewing an agency's interpretation of the statute it administers, the first question is whether "the intent of Congress is clear" as to "the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  If so, that is the "end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress" *Id.*  "The starting point for statutory interpretation is 'the language of the statute.'" *Bull v. United States*, 479 F.3d 1365, 1376 (Fed. Cir. 2007) (internal citations omitted).  "Beyond the statute's text, {the traditional tools of statutory construction} include the statute's structure, canons of statutory construction, and legislative history." *Id.* (internal citations omitted).  "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id.*, citing *Chevron*, 467 U.S. at 843 n.9.

Despite the deference granted to Commerce, its determinations "must have a reviewable, reasoned basis" to be affirmed. *Bando Chem. Indus., Ltd. v. United States*, 16 CIT 133, 136, 787

F. Supp. 224, 227 (1992), *aff'd*, 26 F.3d 139 (Fed. Cir. 1994).  "{T}he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n of United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).  "The court cannot defer to a decision which is based on inadequate analysis or reasoning."  *USX Corp. v. United States*, 11 CIT 82, 88, 655 F. Supp. 487, 492 (1987).

## II.   COMMERCE'S FAILURE TO DETERMINE THE COUNTERVAILABILITY OF THE GOVERNMENT PROVISION OF STEAM COAL FOR LESS THAN ADEQUATE REMUNERATION WAS CONTRARY TO LAW

Commerce may only defer examination of an apparent countervailable subsidy practice to a subsequent administrative review where Commerce discovers or receives notice of a practice that appears to provide a countervailable subsidy and finds that "insufficient time remains" for examination before the final results of review.  *See* 19 C.F.R. § 351.311(c)(2).  In contrast, where a petitioner alleges and Commerce initiates an investigation of a subsidy program during a review, the deferral regulation does not apply.  Here, the statute and Commerce's regulations required Commerce to make a final determination regarding the provision of steam coal for less than adequate remuneration.  As a result, Commerce lacked any legal basis for its decision in the *Final Results* to defer a determination regarding the countervailability of the provision of steam coal for less than adequate remuneration.

Commerce cited no regulatory or statutory authority for deferring its final determination regarding this program.  Commerce first justified deferral of a decision by stating that the record did not indicate "that steam coal is *de jure* specific under 771(5A)(D)(i) of the Act."  *IDM* at Comment 6 (IA ACCESS P.D. 74).  As to *de facto* specificity, Commerce stated that "{a}lthough Petitioners submitted information that 50 percent of the PRC's energy is sourced

- 9 -

from coal, we failed to seek information from the GOC on the extent of use by the steam coal

consuming industries." *Id.* Commerce explained that "we need more information regarding the

*de facto* specificity of this program before we can make a finding as to its countervailability."

*See id.* at Section V.A - Programs for Which More Information Is Required - Provision of Steam

Coal for Less Than Adequate Remuneration.  For those reasons, Commerce said it was "not able

at this time to determine whether steam coal is being provided by the GOC to a specific industry

or enterprise or group of industries or enterprises." *Id.*  Commerce further stated that "we intend

to revisit the *de facto* specificity of this program in a future review." *Id.*

The statute and Commerce's regulations do not authorize deferral where, as here, the

petitioner timely filed a subsidy allegation, Commerce initiated an investigation of the program,

and Commerce even preliminarily determined that the program was countervailable.  As a result,

Commerce's failure to make a final determination regarding the provision of steam coal for less

than adequate remuneration is contrary to law.

**A.     The Statute Unambiguously Instructs Commerce To Determine Whether Or
Not A Countervailable Subsidy Is Being Provided Where, As Here,
Commerce Initiated An Investigation Of Plaintiffs' New Subsidy Allegation**

The standard for initiation of an investigation of a subsidy is set forth in 19 U.S.C. §

1671a.  The standard requires initiation of a CVD proceeding where a petitioner "alleges the

elements necessary for the imposition of the duty imposed by section 1671(a) of this title{.}"  In

general, the allegations must be "accompanied by information reasonably available to the

petitioner supporting those allegations." *Id.*  The statute also permits amendment of the

allegations "at such time, and upon such conditions" as Commerce may permit. *Id.*

Commerce uses the same initiation standard in both investigations and administrative

reviews. *See Certain Kitchen Appliance Shelving And Racks From The People's Republic Of

China*, 77 Fed. Reg. 21744 (Dep't of Commerce Apr. 11, 2012) (final admin. review), and *IDM*

- 10 -

at Comment 3 - Whether The Department's Investigation Of The Provision Of Wire Rod And Steel Strip For Less Than Adequate Remuneration Met The Initiation Standard. In *Certain Kitchen Appliance Shelving And Racks*, Commerce initiated an investigation of a new subsidy allegation regarding the provision of steel strip for less than adequate remuneration and found that the allegation met the standard "under section 702(b)(1) of the Act to initiate an investigation{.} *See id.*

Once an investigation of a subsidy program is initiated, the statute clearly requires Commerce to make a determination regarding the program. Under 19 U.S.C. § 1671b(b), Commerce is required to make a preliminary determination "based upon the information available to it at the time of the determination" regarding "whether there is a reasonable basis to believe or suspect that a countervailable subsidy is being provided with respect to the subject merchandise." While 19 U.S.C. § 1671b(c) permits Commerce to "postpone making the preliminary determination" in certain situations, this is merely a postponement to a later date; Commerce is still required to make the preliminary determination later in the same segment of the proceeding. In the underlying review, Commerce appropriately made an affirmative preliminary determination regarding this program. *See Preliminary Results*, 76 Fed. Reg. at 33232-33 (P.R. 178).

Under 19 U.S.C. § 1671d(a)(1), Commerce "shall make a final determination of whether or not a countervailable subsidy is being provided with respect to the subject merchandise{.)" While the date for a final CVD determination may be extended, extension is not a means to defer the ultimate determination on the provision of countervailable subsidies with respect to the subject merchandise.

Thus, when Commerce initiates an investigation of a countervailable subsidy on the basis

of an allegation that complies with the statute, Commerce must make a both a preliminary and a

final determination regarding the program.  Commerce's decision to not make a final

determination and instead to "revisit" the provision of steam coal for less than adequate

remuneration in a future review was unlawful.

**B.      The Deferral Statute And Regulations Are Irrelevant, Because Commerce Did Not "Discover A Practice Which Appears To Be A Countervailable Subsidy"**

Commerce may only defer investigation of a program in very limited circumstances not

applicable here.  The statute contains a provision addressing situations where Commerce

"discovers a practice" during "the course of a proceeding" that "appears to be a countervailable

subsidy" but "was not included in the matters alleged in a countervailing duty petition{.}"  19

U.S.C. § 1677d.  The statute further instructs Commerce to "include the practice, subsidy, or

subsidy program in the proceeding if {it} appears to be a countervailable subsidy with respect to

the merchandise which is the subject of the proceeding."  *Id.* at § 1677d(1).

Commerce did not "discover" the program regarding provision of steam coal for less than

adequate remuneration in the underlying administrative review.  To the contrary, Plaintiffs

timely filed a new subsidy allegation regarding this program, which Commerce found to meet

the initiation standard that is required for investigation of subsidy programs.  Thus, according to

its plain terms, the statute offers no justification for Commerce's decision to "revisit" this

program in the future instead of making a final determination in the first administrative review.

The legislative history of 19 U.S.C. § 1677d confirms that Commerce unlawfully

deferred completion of its investigation regarding this program to a future review.  When first

enacted, 19 U.S.C. § 1677d addressed subsidy practices discovered during the course of an

<u>investigation</u>.  *See* Trade Agreement Act of 1979, Pub. L. No. 96-39, § 775, 93 Stat. 144 (1979)

- 12 -

(Subsidy Practices Discovered During An Investigation) (emphasis added).  In 1984, Congress

enacted The Trade And Tariff Act of 1984, which amended 19 U.S.C. § 1677d by "striking out

'investigation' each place it appears in the text and in the heading and inserting in lieu thereof

'proceeding'."  Pub. L. No. 98-573, § 617, 98 Stat. 2948 (1984) (emphasis added).  Commerce's

regulations confirm that the definition of "proceeding" includes both an investigation and an

administrative review of an order.  *See* 19 C.F.R. § 351.102(b)(40) (stating that the definition of

"proceeding" begins on the date of the filing of a petition through, in relevant part, revocation of

an order .)  An administrative review of an order necessarily occurs during the life of the order.

Thus, an administrative review of a CVD order falls within the definition of "proceeding."

The related definition of "Segment of proceeding" at 19 C.F.R. § 351.102(b)(47)

confirms this interpretation.  The definition explains that a "countervailing duty proceeding

consists of one or more segments."  *Id.*  Furthermore, 19 C.F.R. § 351.102(b)(47)(i) continues

that "'Segment of a proceeding' or 'segment of the proceeding' refers to a portion of the

proceeding that is reviewable under section 516A of the Act."  *Id.*  A final determination by

Commerce in an administrative review "is reviewable under section 516A of the Act."  *Id. See*

*also* 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and 1516a(a)(2)(B)(iii).  Thus, the requirements of 19

U.S.C. § 1677d apply to an administrative review because an administrative review falls within

the definition of "proceeding."

Commerce promulgated regulations regarding the discovery of countervailable subsidy

practices during an investigation or review.  Codified at 19 C.F.R. § 351.311, the regulations are

applicable "during a countervailing duty investigation or a countervailing duty administrative

review," but, consistent with 19 U.S.C. § 1677d, apply only where "the practice was not alleged

- 13 -

or examined in the proceeding{.}" *Id.* at § 351.311(b).[3]  In such cases, the regulations instruct Commerce to "examine" the subsidy "if the Secretary determines that sufficient time remains before the scheduled date for the . . . final results of review." *Id.*  The regulation empowers Commerce to "defer consideration of the newly discovered practice, subsidy, or subsidy program until a subsequent administrative review" only if "insufficient time remains" before the "final results of review to examine the practice." *Id.*  There is no other basis for Commerce to defer a final determination regarding the countervailability of a subsidy program in either an investigation or an administrative review.

Accordingly, the statute and Commerce's regulations only permit deferral where Commerce "discovers" or otherwise receives notice of a potential subsidy that was not alleged by petitioners.  In this case, Plaintiffs timely filed a new subsidy allegation regarding this program, and Commerce initiated an investigation of the program. *See Countervailing Duty Administrative Review:  Citric Acid And Certain Citrate Salts From The People's Republic Of China:  Analysis Of New Subsidy Allegations* ("*NSA Memo.*") (Feb. 22, 2011) (C.R. 19, P.R. 69). Thus, Commerce had no lawful basis to defer investigation of the provision of steam coal for less than adequate remuneration in the underlying review.

Commerce cited the initiation standard under Section 702(b)(1) of the Act, and noted that "Petitioners must allege the elements necessary for the imposition of the duty imposed by Section 701(a) of the Act." *NSA Memo.* at 3.  With regard to the provision of steam coal for less than adequate remuneration, Commerce examined Plaintiffs' allegation, and determined that the submission "alleged the elements necessary for the finding of a subsidy and supported the{} allegation with reasonably available information." *Id.* at 6.  This is consistent with Commerce's

---

[3] The rule may also be triggered where the United States Trade Representative provides notice to Commerce regarding a subsidy program.

decision to initiate investigations of new subsidy allegations in other administrative reviews. *See, e.g., Certain Kitchen Appliance Shelving And Racks*, 77 Fed. Reg. 21744, *IDM* at Comment 3 - Whether The Department's Investigation Of The Provision Of Wire Rod And Steel Strip For Less Than Adequate Remuneration Met The Initiation Standard.

Commerce's regulations also confirm its "duty to investigate a timely allegation" pursuant to 19 C.F.R. § 351.301(d)(4)(i)(B). *See also Bethlehem Steel Corp. v. United States*, 25 CIT 307, 313, 140 F. Supp. 2d 1354, 1361 (2001). That regulation prescribes the time limits for subsidy allegations in investigations and administrative reviews. In *Bethlehem Steel Corp. v. United States*, the Court explained the difference between Commerce's "duty to investigate" timely subsidy allegations and its "'independent obligation to investigate potential subsidies discovered during its investigation.'" *Id.*, citing *Allegheny Ludlum Corp. v. United States*, 24 CIT 452, 462, 112 F. Supp. 2d 1141, 1151 (2000). Consistent with 19 C.F.R. § 351.311(b), deferral of examination is only available for "potential subsidies discovered" by Commerce and does not apply to practices that were alleged in the proceeding.

As the Court stated in *Allegheny Ludlum Corp. v. United States*, "it is always in a petitioner's interest to expeditiously make Commerce aware of potential subsidies." *Id.* Plaintiffs' new subsidy allegation regarding the provision of steam coal for less than adequate remuneration was timely filed on December 15, 2010. Commerce initiated an investigation of this program on February 22, 2011. Commerce published its preliminary results, which included an affirmative determination regarding the countervailability of this program, on June 8, 2011. Commerce published its final results on December 12, 2011. Thus, almost twelve months passed from the time that Petitioners filed their subsidy allegation to the issuance of its final results, and

- 15 -

19237521

Commerce had more than nine months from the date of initiation of the new subsidy investigation to complete the *Final Results*.

In *Bethlehem Steel Corp. v. United States*, 25 CIT at 313, 140 F. Supp. 2d at 1361, the Court wrote that "{t}he fact that Commerce had over four months to investigate what appeared to be a straight-forward subsidy allegation forces the Court to conclude that Commerce's failure to investigate was simply legal error." The Court ultimately concluded that Commerce's failure to investigate that program was "unsupported by substantial evidence and otherwise not in accordance with law." *Id.* On that basis, the Court "remanded to Commerce for further investigation." *Id.* While the Court reviewed and remanded Commerce's decision to <u>not</u> investigate a program in *Bethlehem Steel Corp. v. United States*, the same result is required here because Commerce acted contrary to the statute and its regulations when it chose not to make a final determination regarding an alleged subsidy for which it initiated an investigation and had already made an affirmative preliminary determination.

In sum, this Court should remand to Commerce with instructions to make a final determination regarding the countervailability of the provision of steam coal for less than adequate remuneration and, if necessary, to reopen the record to facilitate completion of this task in accordance with the statute and Commerce's regulations.

## III.   COMMERCE'S FAILURE TO ADJUST THE CALCULATION OF ITS PRELIMINARY BENCHMARK FOR THE GOVERNMENT PROVISION OF STEAM COAL FOR LESS THAN ADEQUATE REMUNERATION WAS CONTRARY TO LAW

For the reasons stated above, Commerce's decision to defer completion of its investigation of the provision of steam coal for less than adequate remuneration program by not making a final determination was contrary to law and must be remanded. That result is also unlawful because Commerce used it to justify not addressing Plaintiffs' argument that the

- 16 -

preliminary determination steam coal benefit benchmark must be adjusted to account for the effect of shipping distance on the cost of international freight. Commerce determined that this issue was "moot" in the *Final Results* because its decision to "revisit" this program in a future review meant that it was "not finding a countervailable subsidy at this time with regard to the GOC's provision of steam coal." *See IDM* at Comment 4 (IA ACCESS P.D. 74). On remand, the Court should instruct Commerce to address Plaintiffs' arguments regarding modifications to the steam coal benchmark used in the preliminary determination to account for the effect of shipping distance on the cost of international freight. This is consistent with Commerce's statute and regulations, which require Commerce to make a final determination regarding a countervailable subsidy program for which it initiated an investigation during an administrative review.

## IV. COMMERCE'S FINDING THAT THE CONSOLIDATED ENTITY RZBC WAS CREDITWORTHY IN 2008 AND 2009 WAS CONTRARY TO LAW AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE

### A. Commerce's Regulation Requires Its Creditworthiness Analysis To Be Based Upon "Information Available At The Time Of The Government-Provided Loan"

Commerce's regulation provides that it will consider a firm to be uncreditworthy if it "determines that, based on information available at the time of government-provided loan, the firm could not have obtained long-term loans from conventional commercial sources." 19 C.F.R. § 351.505(a)(4) (emphasis added). In making the creditworthiness determination, Commerce examines the following factors:

> (A) The receipt by the firm of comparable commercial long-term loans;
>
> (B) The present and past financial health of the firm, as reflected in various financial indicators calculated from the firm's financial statements and accounts;

19237521

(C) The firm's recent past and present ability to meet its costs and fixed financial obligations with its cash flow; and

(D) Evidence of the firm's future financial position, such as market studies, country and industry economic forecasts, and project and loan appraisals <u>prepared prior to the agreement between the lender and the firm on the terms of the loan</u>.

*Id.* at §§ 351.505(a)(4)(i)(A)-(D) (emphasis added).

While Commerce maintains "flexibility and discretion" regarding "which factors to consider and weigh in making its creditworthiness decision,"[4] the regulation requires Commerce to assess those factors "based on information available at the time of the government-provided loan{.}" 19 C.F.R. § 351.505(a)(4)(i).  "In conducting its creditworthiness analysis, the Department is essentially placing itself in the position of a commercial bank at the time the long-term loan in question is being approved and asking, would the bank make this loan?" *RZBC Final Creditworthiness Determination* at 8 (IA ACCESS C.D. 63, P.D. 77).

Thus, the information used in the creditworthiness analysis must have been available at the time of the government-provided loan.  In *Certain New Pneumatic Off-the-Road Tires From The People's Republic Of China*, Commerce explained that its "regulations state that we will determine creditworthiness 'based on information available at the time of the government-provided loan . . . .'"[5]  Commerce further explained that "when we consider any prospective analyses available in the market at the time regarding the firm's future financial position," the "primary concern is not whether any particular projections are borne out by future events, but

---

[4] *Saarstahl AG v. United States*, 21 CIT 1158, 1162, 984 F. Supp. 616, 620 (1997), *aff'd in part and rev'd in part on other grounds*, 177 F. 3d 1314, 1320 (Fed. Cir. 1999).

[5] *Certain New Pneumatic Off-the-Road Tires From The People's Republic Of China*, 73 Fed. Reg. 40480 (Dep't of Commerce Jul. 15, 2008) (final determination) and *IDM* at Comment 4.

rather what commercial projections were available at the time." *Id.* This reinforces the regulatory requirement that Commerce's creditworthiness analysis be based upon information "available at the time of the government-provided loan." *See also Sulfanilic Acid From Hungary*, 67 Fed. Reg. 60223 (Dep't of Commerce Sept. 25, 2002) (final determination) and *IDM* at Creditworthiness. In *Sulfanilic Acid From Hungary*, Commerce explained its examination of the creditworthiness of Nitrokemia for the year 2000 and noted that "we have no information on record that would have been available in 2000 with respect to Nitrokemia's future financial position{.}" *See also Countervailing Duties: Notice of Proposed Rulemaking and Request for Public Comments*, 62 Fed. Reg. 8818, 8830 (Dep't of Commerce Feb. 26, 1997) ("we will find a company to be uncreditworthy if information available at the time the government-provided loan is made indicates that the firm could not have obtained long-term financing from conventional commercial sources.")

Thus, both the plain language of Commerce's creditworthiness regulation, its statements in the underlying review, and its past practice confirm that any information used in a creditworthiness analysis must have been "available at the time of the government-provided loan." *See* 19 C.F.R. § 351.505(a)(4)(i).

**B.      Commerce's Final Creditworthiness Determinations For 2008 And 2009 Were Erroneously Based On Information Unavailable At The Time Of The Government-Provided Loans**

Commerce's final creditworthiness determinations for the consolidated entity RZBC for 2008 and 2009 failed to comply with its regulation, because its financial ratio analysis was based upon data that were clearly not available at the time of the government-provided loans. In the final determination, Commerce reversed its preliminary finding that the collective entity RZBC was uncreditworthy in 2008 and 2009. *RZBC Final Creditworthiness Determination* at 11-12 (IA ACCESS C.D. 63, P.D. 77). Commerce instead found that that the collective entity RZBC

- 19 -

**Business Proprietary Information Has Been Deleted**

was creditworthy in 2008 and 2009. In doing so, Commerce erroneously relied upon information contained in 2008 and 2009 audit reports that were not available when the government-provided loans were issued.

[     ] long-term loans were at issue: [     ] in 2008 and [     ] in 2009. *See New Subsidy Allegation Supplemental Questionnaire - Section B Response* (Apr. 26, 2011) (C.R. 42, P.R. 134). Specifically, [

]. *See id.* at Exhibit 7. In addition, [

]. *See id.* at Attachments 1 and 5.

In making its final creditworthiness determination for 2008 and 2009, Commerce only examined financial ratios for 2008 and 2009. *See RZBC Final Creditworthiness Determination* at 11-12. It did not consider financial ratios for 2006 and 2007. *Id.* The 2008 and 2009 data upon which Commerce based its financial ratio analysis were derived from financial statements of the four RZBC entities, which were contained in the 2008 audit reports dated [

],[6] and the 2009 audit reports dated **March 10, 2010**.[7]

The 2008 and 2009 financial statements, however, would not have been available to

[                                                             ], when it provided the 2008 loan. Commerce, therefore, should have considered the financial statements for 2006, not the financial statements for 2008. (The 2007 audit reports, dated **May 6, 2008**,[8] were also not available when

---

[6] *See id.*

[7] *See id.*

[8] *See* RZBC Imp. & Exp. Co., Ltd. Original Questionnaire Response (Nov. 8, 2010) at Exhibit 2; RZBC Co., Ltd. Original Questionnaire Response (Nov. 8, 2010) at Exhibit 4; RZBC

Business Proprietary Information
Has Been Deleted

the 2008 loan was issued.)  Basing its creditworthiness determination on information not

available at the time of the loan was contrary to law.

In addition, the 2009 financial statements would not have been available to [

], when it issued its loan, or to the

[                                                      ], when it issued its loan.

Commerce, therefore, should have considered the financial statements for 2006, 2007, and 2008,

not the financial statements for 2009.  Basing its creditworthiness determination on information

not available at the time of the loan was contrary to law.

Thus, the *Final Results* should be remanded with instructions that Commerce reconsider

its creditworthiness analysis by only using information that was available at the time of the loan

agreements, as required by 19 C.F.R. § 351.505(a)(4)(i).

---

(Juxian) Co., Ltd. Original Questionnaire Response (Nov. 8, 2010) at Exhibit 3; and RZBC
Group Co., Ltd. Original Questionnaire Response (Nov. 8, 2010) at Exhibit 2 (collectively, C.R.
8, P.R. 42).

19237521

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons set forth above, Plaintiffs request this Court to enter judgment on the administrative record in favor of Plaintiffs and remand to Commerce with instructions to (1) make a final determination regarding the government provision of steam coal for less than adequate remuneration and to reopen the record to facilitate completion of that final determination, if necessary; (2) to consider Plaintiffs' arguments regarding adjustments to the international freight benchmark used to measure the benefit of steam coal at less than adequate remuneration; and (3) to only use information that was available at the time of the government-provided loans in making its creditworthiness determination for RZBC for the years 2008 and 2009.

Respectfully submitted,

*/s/ Joseph W. Dorn*
Joseph W. Dorn
Patrick J. Togni

KING & SPALDING LLP

Counsel for Plaintiffs

19237521